IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BARBARA J. HUNKER, | ) CASE NO.  5:04CV1321 |
| Plaintiffs, | ) |
| | ) MAGISTRATE JUDGE HEMANN |
| v. | ) |
| | ) |
| ALLIED-BALTIC CHEM., et al., | ) **MEMORANDUM OF OPINION** |
| | ) Docket #97 |
| Defendants. | ) |

This case is before the magistrate judge on consent.  Pending is the motion of plaintiff, Barbara J. Hunker ("Hunker"), for reconsideration of the court's Memorandum of Opinion of October 24, 2006 ("Memorandum"; Docket #95) granting summary judgment to defendants, Allied-Baltic Rubber, Inc. ("Allied") and Al Meyers ("Meyers") ("Pl. mot.; Docket #97).  Defendants oppose Hunker's motion ("Def. opp."; Docket #98).  For the reasons stated below, the court overrules Hunker's motion.

I

A motion to reconsider is properly treated as a motion to alter or amend judgment made pursuant to Fed. R. Civ. P. 59(e) ("R. 59").  *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982).  A court may grant a motion to alter or amend judgment if it has made a clear error of law, there is newly discovered evidence, there has been an intervening change in controlling law, or to prevent manifest injustice.  *GenCorp, Inc. v. American Intern. Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted).  "To constitute 'newly discovered evidence,' the evidence must have been previously

unavailable." *Id.*; *see also Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir. 1989) ("It is well established . . . that a district court does not abuse its discretion in denying a Rule 59 motion when it is premised on evidence that the party had in his control prior to the original entry of judgment."). A motion to alter or amend judgment is not an opportunity to reargue a case. "Rule 59(e) motions are aimed at *re* consideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (quoting *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992).

II

The court incorporates by reference its description of the relevant facts in its Memorandum.

As defendants note, Hunker cites no newly discovered evidence or new law in support of her motion. Hunker gives as the basis for her motion "that materials in the record were overlooked or misinterpreted by the Court in concluding that there were no genuine issues of material fact on the question of whether the Defendants' articulated business reason for its adverse employment action against Plaintiff was pretextual." Pl. mot. at 2. The court assumes, therefore, that Hunker is arguing that the motion should be granted to prevent manifest injustice.

A.  *Prima facie case of discrimination*

Hunker erroneously begins by stating that the court did not hold that she failed to

establish a *prima facie* case of discrimination.[1] In fact, the court found that Hunker failed to establish a *prima facie* case of discrimination with respect to her claims of disparate treatment as regards the failure to give her a performance evaluation, the failure of defendants to lend her money when they loaned money to two male employees, Meyers' belittling of her suggestions, and her termination. The court found as follows regarding these claims:

> Although Hunker alleges maltreatment by Meyers, few of her allegations indicate that she was treated badly because she was a woman or indicate that similarly-situated men were treated differently. While Hunker alleges that she never received performance evaluations, she does not show that she was treated differently than males in this respect. Hunker also alleges that Meyers made loans to two male managers but would not even discuss Hunker's request for a loan and that she was fired after asking for a loan while the two males were not. But these allegations are not accompanied by evidence showing that the two males were similarly situated to her. Defendants contend that Hunker was in a position requiring financial acumen and that her failed personal finances indicated a lack of ability in this area. Hunker does not show that the males to whom she compares herself were also in positions requiring similar financial abilities. Moreover, Hunker states that "Myers had made loans to dozens of employees . . . ." Pl. opp. at 13. Hunker gives no indication of the gender of the employees to whom Meyers loaned money other than the two male managers to whom she compares herself. These allegations do not, therefore, tend to establish a *prima facie* case of gender discrimination.
> Similarly, Hunker complains that Meyers generally belittled her for her suggestions, told her to "shut up and never mention it again" when she raised violations of overtime pay rules, ignored her suggestions and requests for discussions, overrode her decisions, and when Hans left his position as Director of

---

[1] It is not clear, however, whether Hunker means to assert this. The relevant sentence in Pl. mot. reads, "The Court does not directly hold that Plaintiff failed to meet her burden to establish a prima facie case on the issues of sex discrimination, hostile work environment, retaliation, or equal pay act violations, but, instead, chose to deal primarily with whether the Defendants had articulated a legitimate business reason for its suspension and job abolishment pursuant to a reorganization of the Library, and, thus, whether, in the alternative, its decision to terminate Plaintiff was pretextual." Pl. mot. at 2. There was no suspension, job abolishment, or library in Hunker's case. The court will assume, given the lack of agreement in number between "Defendants" and the personal pronoun "its," that only the portion of the sentence after "legitimate business reason" is a solipsism.

> Finance and Administration Meyers passed his responsibilities to Hunker. There is no evidence, however, that Hunker was treated in this way because she was a woman or that similarly situated males were treated differently. Without evidence of differential treatment based on sex, these allegations do not tend to establish a *prima facie* case of discrimination.
>
> \* \* \* \* \*
>
> Hunker's claim that defendants discriminated against her by terminating her is also without merit . . . Hunker fails to establish a *prima facie* case of discrimination because she does not show that for the same or similar conduct she was treated differently than similarly-situated males. Although she argues that two males were not terminated when they asked for a loan, she does not show that these males were similarly-situated to her. And even though Carson and Hans were arguably similarly-situated to her, Hunker does not show that they were treated differently for the same or similar conduct.

Memorandum at 11-13 (footnotes omitted). The court found, therefore, that Hunker had failed to established a *prima facie* case of discrimination with regard to these claims.

The court also found that Hunker failed to establish a *prima facie* case of discrimination with respect to her claims of a hostile work environment. The court noted that a *prima facie* case of discrimination required finding:

> (1) the harassment was unwelcome; (2) the harassment was based on sex; (3) the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment; and (4) the harassment was committed by a supervisor or the employer, through its agents or supervisory personnel, who knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

Memorandum at 15 (citing *Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 459 (6th Cir. 2004)). The court also explained that the standard included an objective component which required that the conduct be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive. The court then found as follows:

> Hunker provides no evidence that defendants treated similarly-situated males differently than she as regards overriding her judgments or depriving her of authority. Hunker alleges three respects in which defendants might be regarded as

>evidencing contempt or disdain for women: Meyers' use of the terms "brainless bitch" and "stupid broad" and Allied's alleged failure to discipline a male employee for viewing pornography on his computer. Hunker alleges a single instance of Meyers' use of each of the offensive terms during her two-year term at Allied. She does not describe how often the male alleged to be viewing pornography did so, nor does she say how easily that pornography could be seen by other employees. The frequency and severity of these alleged instances of offensive behavior fall far short of creating a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ." *Knox*, 375 F.3d at 459. Hunker cannot, therefore, meet the requirements of the objective standard for determining whether she suffered from a hostile working environment.

Memorandum at 20-21. Hunker failed, therefore, to establish a *prima facie* case of discrimination due to a hostile work environment.

The court assumed, without finding, that Hunker had established a *prima facie* case of retaliation, and it found that Hunker had established a prima facie case of discrimination due to disparate treatment as regards her claim that male controllers Carson and Hans were paid more than her because of her gender. The court also found that Hunker had established a *prima facie* violation of the federal and state equal pay statutes.[2]

Hunker presents no arguments to demonstrate that the court's findings regarding Hunker's failure to establish a *prima facie* case of discrimination with regard to any of the above claims results in a manifest injustice. The court overrules Hunker's motion, therefore, to the extent that it involves any claim for which the court found that Hunker had failed to establish a *prima facie* case of discrimination.

---

[2] The court also dismissed Hunker's cause of action in tort for termination in violation of public policy because it found that Hunker had failed to establish a violation of the federal and state anti-discrimination statutes, a necessary predicate to the action in tort in Hunker's case.

5

B.     *Legitimate business reason and pretext*

Once a plaintiff establishes or is assumed to have established a *prima facie* case as regards any claim of discrimination, the burden is on defendants to proffer legitimate business reasons for taking the adverse action.  If defendants proffer legitimate business reasons for the adverse action, the burden is on plaintiff to demonstrate that those legitimate business reasons are mere pretexts for discrimination.  A plaintiff may establish that a reason is pretextual in any of three ways:  (1) by showing that the proffered reason for the adverse action has no basis in fact, (2) by showing that the proffered reason did not, in fact, motivate the adverse action, or (3) by showing that the proffered reason was insufficient to have motivated the adverse action.  *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994).

Hunker focuses in her motion on the court's finding that Hunker was unable to provide evidence that defendants' professed legitimate business reasons for terminating Hunker were mere pretext.  Defendants claimed that Hunker was terminated due to excessive absenteeism, her failure timely to install the FAS software, the lack of financial skills reflected in her request for a $25,000 loan, and her error in the September 2003 inventory reconciliation.  Hunker argues as follows:

> The Court found that the reasons for Plaintiff's termination articulated by the Defendants consisted of ". . . excessive absenteeism, her failure to timely to install [sic] the FAS software, the lack of financial skills reflected in her request for a $25,000 loan, and her error in an inventory reconciliation that resulted in a short-term loss of about $25,000."  The Court held that the Plaintiff failed to show that her request for a $25,000.00 loan or her error in the inventory reconciliation"had no basis in fact, did not motivate her termination, or were insufficient to have motivated her termination."  It would appear that the Court found the other reasons submitted by Defendants to be pretextual, or, at least, to have no basis in fact, not to have motivated her termination, or to be insufficient to motivate her termination.  See Memorandum of Opinion, page 14.

6

> The Court, however, does not dispute Mrs. Hunker's allegations that Myers made loans to tow [sic] male employees or "dozens of employees." See Court's Memorandum of Opinion, page 11. Therefore, it is erroneous to conclude that the request for a $25,000.00 loan as a motivation for termination, "had no basis in fact, did not motivate her termination, or [was] insufficient to have motivated her termination."
>
> With regard to the error in an inventory reconciliation that resulted in a short-term loss of about $25,000.00, the Court itself decries the Defendants' allegation of poor performance by the Plaintiff. In its Memorandum of Opinion at page 3, the Court notes in a footnote that: "Defendants alleged that Hunker made "numerous and significant mistakes" in her work. Def. mot. at 5. This is the only mistake detailed by defendants." Hence the Court explicitly notes that only one mistake out of "numerous and significant mistakes" is described by the Defendants' summary judgment motion. This should be considered by the Court in a light most favorably [sic] to the Plaintiff.
>
> \* \* \* \* \*
>
> The inconsistency of the Defendants' rationales for termination and the paucity of evidence in support of its articulated basis of poor performance ("numerous and significant mistakes") should also be considered in determining whether there is sufficient evidence to overcome the Plaintiff's contention that said articulation is pretextual.
>
> Because the Defendants' articulated legitimate business reason for discharge, as reflected by the record, is in no way ". . . so one-sided that the moving party must prevail as a matter of law," it is inappropriate to grant summary judgment. See [*Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996)]; *Salovaara v. Eckert*, 222 F.3d 19 (2nd Cir. 2000); *Byrd v. Smith*, 110 OS3d 24 (2006).

Pl. mot. at 3-4 (punctuation in the original).

Hunker's argument mis-states the court's opinion. First, the court did not find that any of defendants' reasons for Hunker's termination had no basis in fact, did not motivate her termination, or were insufficient to motivate her termination. The court wrote as follows:

> Defendants claim that Hunker was terminated because of excessive absenteeism, her failure timely to install the FAS software, the lack of financial skills reflected in her request for a $25,000 loan, and her error in the September 2003 inventory reconciliation. The court assumes that Hunker is correct in asserting that she had no absences in 2003 and that her failure to install the FAS software within 19 days was due to impossibility of the task. A jury could find, therefore, that these reasons for her termination are mere pretexts.

7

Memorandum at 14.  Thus, the court made no finding as regards the merits of the parties' claims regarding absenteeism and the failure to install the software.  The court simply assumed for purposes of the motion for summary judgment that Hunker could support her claims and that a jury could find that these reasons for termination were mere pretext.

Second, the court did not base its findings regarding the request for a $25,000 loan merely on the fact that Hunker was denied a loan while two male employees or dozens of employees requested loans and were not fired.  Defendants had argued that because Hunker was in a position requiring financial acumen, *her request for a large loan reflected poorly on financial skills needed for satisfactory performance of her job*.  Hunker did not assert that any other employee who asked for a loan and was not fired was also in a position requiring financial acumen.  In examining whether Hunker had demonstrated that defendants' contentions that she was fired because of the lack of financial acumen reflected in her request for a loan or for failing timely to install the software were mere pretext, the court found as follows:

> Hunker does not deny . . . that she asked Meyers for a $25,000 loan and made an error in an inventory reconciliation that resulted in a short-term loss of about $25,000.  Thus, she does not show that these reasons for her termination had no basis in fact.  Hunker also offers no evidence that these proffered reasons did not, in fact, motivate her termination.  Nor does Hunker demonstrate that the proffered reasons were insufficient to have motivated her termination. Whether Meyers is correct in his belief that a failure to manage one's personal finances reflects poorly on one's ability to manage the finances of others is beside the point. The belief is, at least, not unreasonable.  Similarly, regardless of the wisdom of the action, terminating an employee whose error cost a business $25,000, even if the loss is merely a short-term loss, cannot be said to be unreasonable.  Hunker's claim that defendants discriminated against her in violation of Title VII and Ch. 4112 by terminating her, therefore, is without merit.

Memorandum at 14-15.  In other words, Hunker failed to demonstrate that defendants' claims that they terminated her because of the lack of financial skills reflected in her

request for a $25,000 loan and her error in the September 2003 inventory reconciliation were mere pretexts for discrimination. Hunker admitted the factual bases for defendants' reasons and offered no evidence that these reasons did not, in fact, motivate her termination or were insufficient to have motivated her termination. In addition, the court found as a matter of law that no reasonable jury could find that these reasons were insufficient to have motivated her termination. Consequently, Hunker had absolutely no legal ground on which to oppose defendants' motion for summary judgment with regard to her termination. That being the case, the court granted defendants' motion as it related to her termination.

Hunker has failed to present any argument demonstrating that granting defendants' motion for summary judgment with regard to her termination results in a manifest injustice. For this reason, the court overrules Hunker's motion for reconsideration as it relates to claims based on her termination.

Hunker's motion presents no arguments regarding the court's decision to grant defendants' motion with regard to Hunker's claims of disparate treatment and violations of the equal pay statutes related to the difference in pay between her and the male controllers. The court overrules Hunker's motion, therefore, to the extent that it involves any claim regarding discrimination because of pay differences between her and male controllers. Thus, Hunker's motion is overruled as to all claims dismissed in the court's opinion dated October 24, 2006.

### III. Conclusion

For the reasons given above, the court overrules Hunker's motion in its entirety.

**IT IS SO ORDERED.**


Dated:  November 17, 2006         s:\Patricia A. Hemann
                                  Patricia A. Hemann
                                  United States Magistrate Judge